UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CAPRICE NEWTON

    Plaintiff

CASE NO.:

vs.

BEST Engineered Surface Technologies, LLC doing business as WINDSOR METAL FINISHING

    Defendant(s).
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

CAPRICE NEWTON, Plaintiff herein, files this Complaint against BEST Engineered Surface Technologies, LLC (a Texas LLC) doing business as WINDSOR METAL FINISHING ("WINDSOR" or "Defendant(s)" herein), and alleges:

1. This is an action under Title VII of the 1964 Civil Rights Act as amended, 42 U.S.C. Section 2000e-2(a), to 42 U.S.C.§1981 and Florida Civil Rights Act 760.01 et seq. for unlawful employment practices on the basis of race, color, and retaliation. Plaintiff suffered said damages as a result of being subjected to race and color discrimination and from being unlawfully retaliated against by Defendant(s)s after Plaintiff complained about discriminatory treatment.

## JURISDICTION AND VENUE

2. Defendant BEST Engineered Surface Technologies, LLC (a Texas LLC) doing business as WINDSOR METAL FINISHING ("WINDSOR") in the State of Florida is a Texas corporation or Foreign corporation/entity engaged in trade and commerce and doing

1

and authorized to do business in the State of Florida in Osceola County, Florida and within this Court's District.

3.  This court has subject matter jurisdiction pursuant to Article III, Section 1 of the U.S. Constitution and 28 U.S.C. sections 1331, 1332 and 1343.

4.  This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

5.  All conditions precedent to jurisdiction have occurred or been complied with. Charges of discrimination were filed with the Equal Employment Opportunity Commission and Florida Commission on Human Relations within three hundred days and three hundred and sixty-five days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter. (See Exhibit "A")

6.  Venue is proper in U.S. District Court, Orlando Division, Orlando, Florida, because Defendant's principal place of business in Florida is located in Osceola County, Florida and/or all actions material to the complaint have occurred in Osceola County, Florida or within this District.

## PLAINTIFF

7.  The Plaintiff CAPRICE NEWTON is a natural person residing in Osceola County, Florida and was doing so at all times material to this action. Plaintiff worked in a Quality Control position and as an Estimator with Defendant(s) throughout the Central Florida, but specifically within the Osceola County

District/Region.

**DEFENDANT(S)**

8.     The Defendant(s)  WINDSOR METAL FINISHING, (hereinafter "WINDSOR" OR "Defendant(s)") are/is an active for-profit corporation and/or entity doing business in Florida with its principal place of business at 1820 AVENUE A. POINCIANA, FL 34758.  At all times material to the allegations of this complaint, JUMARIE RIVERA (Hispanic)(Hereinafter "RIVERA"), was the General Manager, was the supervisor of Plaintiff, and was acting within the course and scope of her employment in a managerial and supervisory position with Defendant.

**FACTS RELEVANT TO PLAINTIFF'S CAUSES OF ACTIONS AND CLAIMS**

9.     Plaintiff, Caprice Newton (African-American), (hereinafter "NEWTON" or "Plaintiff" was employed by Windsor Metal Finishing from May 31, 2014, to March 25, 2019, in a Quality Control Position. Beginning in March 2019, Plaintiff (and other African-American employees) began being subjected to derogatory, racially adverse actions and harassment by RIVERA.  At this time, RIVERA referred to Plaintiff as "Bitch"; informed Plaintiff that the "Spanish" temp. workers were saying negative things about Plaintiff and the African-American employees; that everyone knows Plaintiff is a "Bitch" and that she "knows Plaintiff is a hard worker but still a Bitch" and that "Bill" [the owner] made the right decision when picked a Hispanic woman to run the company as they are better than black women.   Plaintiff complained to management about the conduct and discriminatory treatment of RIVERA towards

African-American and black employees, yet Plaintiff's complaint(s) were summarily dismissed and ignored.

10. In March of 2019, Plaintiff was promoted to Estimator, to which she remained in that position until she was compelled to leave the company on May 31, 2020. During that time, Plaintiff was consistently subjected to harassment and subjected to racial discrimination and a racially hostile work environment in that, among other things, Plaintiff was constantly being accused by RIVERA of issues at work that had been clearly caused by other employees who were Hispanic. [1]

11. With respect to these false accusations, allegations and claims being levied against Plaintiff, RIVERA constantly falsely accused Plaintiff of being behind in her work relating to the ERP system, when in fact, Plaintiff was not behind in her work, but her Hispanic colleagues actually were. Also, RIVERA would wrongly accused Plaintiff of making shipping errors, when in fact, it was the Hispanic employees under RIVERA who were making these mistakes. Additionally, RIVERA falsely accused Plaintiff of inputting information relating to paint inventory in which Plaintiff had nothing to do with. To this end, two Latino employees [Kyle Rodriguez and Raymond Melendez] were responsible for these paint inventory issues. Finally, on another more serious occasion, a customer requested Plaintiff to provide a sales quote, and the customer approved the sales quote, which was for $50,000.00. The customer sent Plaintiff a signed purchase order for the exact amount of the quote. Thereafter, Joanna Rosario

---

[1] Plaintiff was also being accused of material(s) being lost in the warehouse, although she did not work in the warehouse; of material(s) being mislabeled/mismarked with other customers information and of inventory and shipping issues, errors and mistakes which were being made by Hispanic employees under Rivera.

informed Plaintiff that she, Rosario, had overbilled the customer by $420.00. However, notwithstanding the admission of fault by Rosario, RIVERA falsely accused Plaintiff of changing her quote and causing the over-overbilling. This false accusation, like all the others complained of herein, were consistent, constant, pervasive, false and directed at Plaintiff due to her race.

12. Additionally, Plaintiff was constantly harassed by being called a "liar" ; being called a "loudmouth"; being called a "troublemaker" and lied to and on by RIVERA in front of other employees. In fact, RIVERA would never refer to the Hispanic employees in this manner and Plaintiff witnessed other African-American employees receive similar/same discriminatory treatment from RIVERA. Moreover, Plaintiff was harassed and referred to in these derogatory terms, notwithstanding Plaintiff has never been reprimanded, disciplined or written up for causing any type of dissension in the workplace.

13. Of equal importance, similar-situated Hispanic employees were treated more favorably and given preferential treatment. To this point, there were 2 other employees Hispanic employees (Alexis Cabrera and Marcos Ortiz) who work in the same position as Plaintiff. On multiple occasions, these employees made mistakes at work, caused billing problems, overages in paint amounts etc. yet neither received the same response, actions or treatment from RIVERA. RIVERA never walked around the office complaining about Cabrera or Ortiz being behind in their work, being late ordering paint, failing to get enough paint ordered or blended, or making other errors even though both were guilty of all of these offenses on multiple occasions. Clearly the

5

treatment of Plaintiff was discriminatory and Plaintiff was subjected to disparate treatment by RIVERA due to her race.

14. In the same vein, these same 2 employees (Alexis Cabrera and Marcos Ortiz) also received commissions for their work, yet Plaintiff held the same title, did the same work and more, still Plaintiff did not get any commissions. Based on the sales report(s), which are in Defendant's possession, Plaintiff is owned approximately $15,000.00 in commissions. More stunningly, RIVERA would repeatedly request Plaintiff to ask Cabrera and Ortiz if they had gotten their paint orders in before Plaintiff sent out hers. To this end, as the General Manager, RIVERA, not Plaintiff, should have been the person to confront employees who were not performing their required tasks.

15. Plaintiff and other African-Americans were constantly being discriminated against and subjected to disparate treatment by RIVERA. Indeed, on one of many similar instances, a Hispanic inventory clerk [Edwin Torres] was informed by a line loader that certain paperwork did not match. Plaintiff had nothing to do with the paperwork. Plaintiff and Torres reviewed the entire line, and confirmed, verified, and/or ensured the paperwork did match. Upon arriving at work, RIVERA was informed by the line driver that he, the line driver, fell behind his work because the paperwork did not match, which was inaccurate and incorrect. Instead of assessing the situation, RIVERA immediately started yelling at Plaintiff, accusing Plaintiff of being a troublemaker, belittling Plaintiff and accusing Plaintiff of "not knowing her job", notwithstanding that Torres informed RIVERA that Plaintiff was not at fault and that

the line driver was wrong. Again, RIVERA never treated Hispanic or white employees in this manner.

16. As a matter of fact, RIVERA escalated this incident into calling Plaintiff names and lodging personal attacks on Plaintiff and other African-American employees, accusing Plaintiff and the African-American employees of "talking to Bill" about private matters regarding her, RIVERA, and stating "black people are useless" . Indeed, these were the type of derogatory, racist and discriminatory treatment Plaintiff had to endure, which likewise, created a racially hostile work environment.  On another occasion, two woman entered the office.  They women were seeking employment.  One of the women was darker skinned.  RIVERA did not want to talk with them and instructed Plaintiff to help them.  While Plaintiff was speaking with the women, it became apparent they were Hispanic and spoke Spanish, upon becoming aware they were likely Hispanic, RIVERA then took interest in them.

17. Furthermore, RIVERA was intentionally, purposely and actively trying to undermine Plaintiff's work performance or production output by giving Plaintiff more, and additional duties, outside her job description, insofar as other Hispanic employees, who were hired to perform these tasks and duties were unable to do so. For instance, RIVERA tasked Plaintiff with doing paint inventory and purchasing, notwithstanding that Plaintiff informed RIVERA that undertaking such a duty would cause Plaintiff to fall behind.  RIVERA informed Plaintiff "we will deal with it."  Nonetheless, when Plaintiff in fact fell behind on anything relating to her job duties because of these additional tasks, RIVERA would engage in and initiate a campaign of harassment,

discriminatory treatment and personal attacks and affronts on Plaintiff, and on multiple occasions, in front of other employees.

18. Furthermore, RIVERA discriminated against Plaintiff due to her race and harassed Plaintiff and subjected Plaintiff to adverse employment actions in retaliation for complaining to management about discrimination. To this regard, RIVERA falsely accused Plaintiff of leaking information to the RIVERA'S Supervisor, RIVERA then tried to write Plaintiff up for other reasons on the same day. The write-up supposedly occurred on September 13, 2019, yet the matter was not even discussed with Plaintiff until October 10, 2019, to wit, a month later. However, the write-up was premised on information RIVERA fabricated to which Plaintiff refused to sign. A week later Plaintiff was given an excellent review and a raise, which demonstrated the harassment Plaintiff was being subjected to after she complained about RIVERA was retaliatory and discriminatory.

19. RIVERA also retaliated against Plaintiff after she complained to management about RIVERA'S misconduct, discriminatory conduct and racist comments by repeatedly accusing Plaintiff of issues that Plaintiff didn't cause and to which Plaintiff had no involvement for the purposes of damaging Plaintiff's employment opportunities, to wit, the incident with Joanna Rosario, which led to Plaintiff's constructive discharge after Plaintiff was berated, belittled and verbally attacked and humiliated by RIVERA for a mistake Rosario (Hispanic) clearly made.[2]

---

[2] See Paragraph 11.

20. RIVERA further retaliated against Plaintiff in that Plaintiff was assigned more duties than the Hispanic Estimators when Plaintiff refused to partake in RIVERA's untruthfulness. Likewise, Plaintiff was subjected to constant criticism, verbal attacks and ostracism by RIVERA after complaining to management. There was a casual connection between Plaintiff's complaints of discrimination and the adverse actions by Defendant and RIVERA, which quickly followed.

21. Plaintiff continued to complain to management about the discriminatory treatment from the RIVERA, even and up until the day she was constructively discharged from her employment; however, no action was ever taken to curtail the discriminatory and harassing treatment by RIVERA or address the racially hostile work environment that RIVERA created.

## COUNT I: <u>VIOLATIONS OF 42 U.S.C. §1981  AGAINST DEFENDANT</u>
## ("Race Discrimination- Racially Hostile Work Environment-Retaliation")

22. NEWTON repeats, re-alleges and incorporates paragraphs 1-21 set forth above.

23. NEWTON is African-American and therefore a member of the protected class and/or is black pursuant to 42 U.S.C. §1981.

24. At all times material to this action NEWTON was employed with WINDSOR under the auspices of an employment contract, either express, implied or at-will.

25. At all times material to this Complaint, Defendant, or Defendant through its agents, representatives and employees, who were acting in the course and scope of

their employment, was/is an employer within the meaning of Section 1981 with fifteen (15) employees.

26. The Defendant, WINDSOR deprived Plaintiff of her civil rights under 42 U.S.C. § 1981 by intentionally subjecting Plaintiff to a racially hostile work environment, discriminating and retaliating against Plaintiff with respect to the benefits, rights, privileges, terms and conditions of her employment contract by discriminating against and retaliating against Plaintiff with the specific purpose of humiliating, embarrassing, ostracizing and causing Plaintiff further harm and with the purpose of adversely affecting Plaintiff's ability to gain future and further employment.

27. That Defendant WINDSOR through RIVERA has never on any other occasions acted in such a manner with white or Hispanic former or current employees who have entered into such or similar employment related contract(s), agreements or relationships with WINDSOR.

28. 42 U.S.C. §1981(a) states in pertinent part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by **white citizens**, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

29. 42 U.S.C. §1981 (b) states in pertinent part, "For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and

conditions of the contractual relationship.

30. Based on the foregoing allegations as set forth in paragraphs 9-21, specifically, the WINDSOR violated Plaintiff's civil rights under 42 U.S.C. §1981 by subjecting Plaintiff to racially hostile work environment, discriminating and retaliating against Plaintiff in the making and enforcement of her employment contract and employment relationship, including the performance, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship between Plaintiff and WINDSOR.

**WHEREFORE**, NEWTON demands the following relief: compensatory damages, emotional pain, suffering, inconvenience, mental anguish, loss of the enjoyment of life, lost benefits, future pecuniary losses, punitive damages, prejudgment interest, attorney's fees, and costs pursuant to the 42 U.S.C. §1981 and §1988; and non-pecuniary damages afforded under Section 1981; a trial by jury and any other relief this court deems just and proper.

**COUNT II: <u>VIOLATIONS OF TITLE VII  AGAINST DEFENDANT</u>**

**("Race discrimination-Racially Hostile Work Environment and Retaliation")**

31. Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint:  Paragraphs 1 through 21.

32. Plaintiff has exhausted her administrative remedies as described in paragraph 5 above and therefore all conditions precedent to filing suit under Title VII have been met.

33. Defendant(s) by and through Defendant's agents, engaged in unlawful

employment practices involving Plaintiff because of her race and color.

34.     Defendant(s) by and through Defendant's agents, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's race and color in violation of 42 U.S.C. Section 2000e-2(a).

35.     Defendant, by and through Defendant's agents, classified Plaintiff in a manner that deprived her of an equal employment opportunity that was provided to other non-black employees similarly situated in violation of 42 U.S.C. Section 2000e-2(a).  More importantly, Plaintiff, a black female, was subjected to **discrimination** because of her race and color in that Plaintiff was subjected to ongoing and constant **racial discrimination, including being subjected to a racially hostile work environment** due to her race as described in paragraphs 9-17 above.

36.     Additionally, Plaintiff was subjected to retaliation insofar as after Plaintiff complained to management about the racist, discriminatory, derogatory comments and conduct of RIVERA and the discriminatory treatment of RIVERA adverse actions followed, in which there was a causal connection between Plaintiff's complaints and the adverse and retaliatory treatment and actions that immediately followed as described in paragraphs 18-21.

37.     As a direct and proximate result of the aforementioned violations, Plaintiff has suffered injuries, including being constructively discharged from her employment, loss of income, loss of benefits, loss of reputation, embarrassment and humiliation,

inconvenience, loss of enjoyment of life, emotional pain and suffering, and severe emotional distress and anguish.

**WHEREFORE**, Plaintiff demands the following relief: compensatory damages, lost benefits, lost income including back pay and front pay, prejudgment interest, attorney's fees, and costs pursuant to Title VII, punitive damages, a trial by jury and any other relief this court deems just and proper.

## COUNT III VIOLATIONS OF FCRA 760.01 AGAINST DEFENDANT
## ("Race discrimination-Racially Hostile Work Environment and Retaliation")

38. Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint: Paragraphs 1 through 21.

39. Plaintiff has exhausted her administrative remedies as described in paragraph 5 above and therefore all conditions precedent to filing suit under FCRA 7601.01 et seq., have been met.

40. Defendant(s) by and through Defendant's agents, engaged in unlawful employment practices involving Plaintiff because of her race and color.

41. Defendant(s) by and through Defendant's agents, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's race and color in violation of FCRA 760.01 et seq.

42. Defendant, by and through Defendant's agents, classified Plaintiff in a manner that deprived her of an equal employment opportunity that was provided to

other non-black employees similarly situated in violation of FCRA 760.01 et seq.,  More importantly,  Plaintiff, a black female, was subjected to **discrimination** because of her race and color in that Plaintiff was subjected to ongoing and constant **racial discrimination, including being subjected to a racially hostile work environment** due to her race as described in paragraphs 9-17 above.

43.	Additionally,  Plaintiff was subjected to  retaliation insofar as after Plaintiff complained to management about the racist, discriminatory, derogatory comments and conduct of RIVERA and the discriminatory treatment of RIVERA adverse actions followed, in which there was a causal connection between Plaintiff's complaints and the adverse and retaliatory treatment and actions that immediately followed as described in paragraphs 18-21.

44.	As a direct and proximate result of the aforementioned violations, Plaintiff has suffered injuries, including being constructively discharged from her employment, loss of income, loss of benefits, loss of reputation, embarrassment and humiliation, inconvenience, loss of enjoyment of life, emotional pain and suffering, and severe emotional distress and anguish.

**WHEREFORE**, Plaintiff demands the following relief: compensatory damages, lost benefits, lost income including back pay and front pay, prejudgment interest, attorney's fees, and costs pursuant to FCRA 760.01 et seq.,  punitive damages, a trial by jury and any other relief this court deems just and proper.

**DATED this the 6TH day of July 2021.**

By: **/S/ Frank T. Allen**
FRANK T. ALLEN, ESQUIRE
Florida Bar No.: 0033464
**THE ALLEN FIRM, P.A.**
A Professional Association
2582 Maguire Rd., Suite 130
OCOEE, FL 34761
Tel. (407) 481-8103
Fax (407) 481-0009
E-Mail: Fallen@TheAllenFirmPA.com
Trial Counsel and Attorneys for Plaintiff

/S/ Caprice Newton
CAPRICE NEWTON, Plaintiff